1
2
3
4
5
6                    UNITED STATES DISTRICT COURT

7                    EASTERN DISTRICT OF CALIFORNIA

8

9   | LESLIE BILLINGS,                          | CASE NO. 1:17-CV-1600 AWI JLT

10  |                    Plaintiff

11  |          v.                               | ORDER ON DEFENDANT'S MOTION
                                                  TO TRANSFER VENUE
12  | RYZE CLAIM SOLUTIONS, LLC f/k/a
      Eagle Adjusting Services, Inc., an Indiana
13    Limited Liability Company, and DOES 1-     | (Doc. No. 7)
      10 inclusive
14
                       Defendants
15

16

17          This case was removed from the Kern County Superior Court and is an employment

18  dispute between Plaintiff Leslie Billings ("Billings") and his former employer, Ryze Claim

19  Solutions, Inc. ("Ryze").  In the operative complaint, which is the First Amended Complaint

20  ("FAC"), Billings alleges claims under the California Labor Code (relating to minimum wages,

21  premium wages, meal periods, rest periods, separation pay, reimbursement, and unlawful wage

22  deductions), California Business & Professions Code § 17200, and violation of the federal Fair

23  Labor Standards Act.  Billings attempts to bring collective and class actions claims on behalf of a

24  California class and a nationwide class.  Currently before the Court is Ryze's motion to transfer

25  venue from the Eastern District of California – Fresno Division ("EDC") to the Southern District

26  of Indiana – Indianapolis Division ("SDI").  For the reasons that follow, Ryze's motion will be

27  granted and this case will be transferred to the SDI.

28

From the FAC, Ryze is a comprehensive claims services company that provides residential and commercial property adjusting services throughout the United States. Billings worked for Ryze as a traveling claims adjuster from approximately 2009 to July 2016, and worked out of his home in Bakersfield, California. As a traveling adjuster, Billings traveled extensively to customer locations, gathered measurements and recorded statements, took photographs, gathered prior loss reports, transmitted findings/information to underwriting, and communicated with customers. Billings was required to drive in territories of up to 150 miles to 300 to 400 miles without compensation. Billings was permitted or required to work in excess of 8 hours per day and in excess of 40 hours per week without receiving overtime and double time pay, and worked seven consecutive days without receiving premium pay. Ryze failed to pay minimum wages for all hours worked, and failed to provide mandated meal and break periods. Ryze improperly required Billings to pay for business expenses, including automobile expenses, digital camera expenses, and mileage reimbursement. Ryze also made unauthorized deductions from Billings's wages and failed to timely pay Billings all wages due upon termination of employment. The FAC alleges that Ryze's practices were directed not only at Billings, but also to a Collective Class and a California Class.

**DEFENDANT'S MOTION**

*Defendant's Argument*

Ryze argues that there are employment agreements ("the Agreement") between it and Billings that contains a forum selection clause.[1] The forum selection clause provides that, for any claim of any type that Billings may try and pursue, such claims must be pursued in Hamilton County or Marion County, Indiana state court or the SDI. The forum selection clause is broad and has no limiting language. Therefore, all claims alleged in the FAC fall under the forum selection

---

[1] Ryze is formerly known as Eagle Adjusting Services, Inc. See FAC ¶¶ 1, 7; Devoe Dec. ¶ 4. Billings initially signed an employment agreement with Eagle Adjusting Services, Inc. in May 2009. See Devoe Dec. ¶ 4. In March 2016, Billings signed a subsequent employment agreement that was identical to the May 2009 agreement, except that all references to Eagle Adjusting Services were changed to refer to Ryze. See id. at ¶ 5. Because both the May 2009 and the March 2016 agreements are materially identical, the Court will simply refer to "the Agreement."

clause. Further, the forum selection clause is valid and enforceable because it was not the product of fraud or overreaching, no public policy of California would be contravened by enforcing it, and Billings would not be deprived of his rights simply by having another federal court decide the merits of his claims. Thus, the forum selection clause should be enforced and this case should be transferred to the SDI.

*Plaintiff's Opposition*

Billings argues that there is no enforceable contract. First, Ryze's employee handbook states that no one but an owner of Ryze has the authority to enter into any agreement for employment for a specified period of time unless the agreement is in writing and signed by an owner. The Agreement was signed by a member of Ryze's human resources who is not an owner. Second, Labor Code § 2802 ("2802") requires employers to indemnify their employees for all necessary expenditures or losses in direct consequence of discharging their duties. However, the Agreement violates § 2802 because it required Billings to pay for his own digital camera and all other equipment needed to perform his duties. Pursuant to Labor Code § 2804 ("§ 2804"), contracts that violate § 2802 are null and void. Third, the Agreement is unconscionable because: signing the Agreement without negotiation was a condition of employment, the forum selection clause is one-sided because Ryze can pursue any claim in any court that can exercise personal jurisdiction over an employee but Ryze can only be sued in Indiana, the Agreement violates the employee handbook because it was not signed by an owner, the Agreement attempts to waive rights under § 2802, and the Agreement has a de facto waiver of non-waivable statutory rights under the California Labor Code through operation of the forum selection clause and choice of law clause. Severance of the Agreement's offending provisions is not in the interests of justice because Ryze will not be deterred from continuing to attempt to violate California law and policy.

Alternatively, Billings argues that enforcing the forum selection clause is unreasonable. First, enforcement of that clause would contravene California's strong public policy against waiving statutory employment rights (prompt payment of wages, meal periods, rest periods, overtime and premium wages). The Agreement designates Indiana law as the governing law, and Indiana law does not have the same protections as California law. If the case was transferred to

3

the SDI, Indiana's choice of law provisions would mean applying Indiana law to this case and losing the protections of California labor law. Second, for the same reasons that the Agreement is unconscionable, the forum selection clause is the product of "overreaching."

Billings also argues that considerations under 28 U.S.C. § 1404(a) ("§ 1404(a)") warrant denial of a transfer. Because the forum selection clause is unenforceable, *Atlantic Marine* does not apply, and Ryze has not made a strong showing of inconvenience. In any event, the relevant private and public interest factors that are considered in deciding a § 1404(a) motion favor venue in the EDC.

Finally, even if *Atlantic Marine* does apply, transfer is not appropriate. The public interest factors support keeping the case in the EDC. There is greater localized interest in this case in the EDC, the EDC is more familiar with the governing law, and California's public policy against waiving particular employment rights far outweigh enforcement of the forum selection clause.

*Relevant Contractual Terms*

In pertinent part, the Agreement under § 3 (entitled "Duties and Responsibilities") reads:

> Employee agrees that s/he shall be responsible for providing a digital camera with which s/he can electronically send photographs of claim sites to Eagle for submission to Eagle's clients serviced by Employee. Employee additionally agrees that's/he shall be responsible for providing all other equipment, not specially set forth herein as provided by Eagle, needed to complete his/her duties and responsibilities as a Property Claims Adjuster for Eagle.

In pertinent part, the Agreement under § 7 ("Injunctive Relief and Other Remedies") reads:

> 7.    Injunctive Relief and Other Remedies.  Employee agrees that any breach or threatened breach of the provisions of this Agreement shall cause immediate and irreparable injury to [Eagle/Ryze] for which there exists no adequate remedy at law, thus entitling [Eagle/Ryze] to immediate injunctive relief to restrain or enjoin such breach or threatened breach, without prejudice to any other rights or remedies afforded [Eagle/Ryze] hereunder or by law.  In the event it becomes necessary for [Eagle/Ryze] to institute legal proceedings to enforce any of the terms of this Agreement against Employee, Employee shall be liable to Eagle for all costs of such legal proceedings, including reasonable attorneys' fees.

In pertinent part, the Agreement under § 8 ("Miscellaneous Provisions") provides:

> (a) Severability.  The provisions of this Agreement are severable, and the validity of any one or more provisions shall not affect or limit the enforceability of the remaining provisions. . . .

(b) <u>Applicable Law</u>.  This Agreement shall be construed in accordance with
and governed by the law of the State of Indiana, regardless of the place of
execution or performance.

        (c) <u>Applicable Jurisdiction</u>.  Ryze is based in Indiana, and Employee
understands and acknowledges Ryze's desire and need to defend any litigation
against it in Indiana.  Accordingly, the parties agree that any claim of any type
brought by Employee against Ryze or any of its employees or agents must be
maintained only in a court sitting in Marion County, Indiana, or Hamilton County,
Indiana, or, if a federal court, the Southern District of Indiana, Indianapolis
Division.

        Employee further understands and acknowledges that in the event Ryze
initiates litigation against Employee, Ryze may need to prosecute such litigation in
the Employee's forum state, in the State of Indiana, or in such other state where
Employee is subject to personal jurisdiction.  Accordingly, the parties agree that
Ryze can pursue any claim against Employee in any forum in which Employee is
subject to personal jurisdiction.  Employee specifically consents to personal
jurisdiction in the State of Indiana, as well as any state in which resides a customer
assigned to Employee.

*Discussion*

I.      <u>Validity of the Agreement</u>

        Billings argues that the Agreement is invalid and unenforceable because: (1) it was not

signed by an owner of Ryze despite the requirements of the Employee Handbook, (2) it violates

Labor Code § 2802 and § 2804, and (3) it is unconscionable.

        1.      <u>Insufficient Signature</u>

        The Ryze Employee Handbook reads in relevant part:  "I understand that no one except an

Owner of Eagle has the authority to enter into any agreement for employment for a specified

period of time and that any such agreement must be in writing and signed by an Owner."[2]  Billings

Dec. Ex. D at § 3.10.  The quoted section is from the "Acknowledgement and Receipt" portion of

the handbook.  For several reasons, the Court cannot find that this portion of the employee

handbook invalidates the Agreement.

        First, Paragraph 8(e) is entitled "Entire Agreement" and reads:  "This Agreement

constitutes the entire agreement by and between the parties.  No representations, modifications,

alterations, or agreements shall affect this Agreement unless in writing, signed by Eagle and

Employee, and executed in the same manner as this Agreement."  Devoe Dec. Exs. A & B at ¶

8(e).  The Agreement contains no language that limits or defines who may sign it on behalf of

---

[2] There is no argument that the Eagle employee handbook is in any way different from the Ryze employee handbook.

Ryze.  See Devoe Dec. Exs. A, B.  Rather, the Agreement merely identifies Ryze and Billings as the relevant parties and contains signature blocks for Ryze and "Employee."  The handbook is a separate document from the Agreement.  While the handbook contains a place for an employee's signature as part of the "Acknowledgement of Receipt," there is no place for Ryze to sign.  Thus, the handbook cannot be "executed in the same manner as the Agreement," as required by ¶ 8(e).  Billings has not shown how the handbook can affect the Agreement consistent with ¶ 8(e).

Second, the handbook on the first page states that it "is not intended and should not be understood to create an employment contract," and that the "policies and practices described in this handbook are subject to change without notice by Eagle."  Id. at § 1.1.  This is consistent witch the Acknowledgement and Receipt, which states that the handbook "does not create an employment contract," it "sets out general information as to current personnel policies and practices," and Ryze/Eagle "reserves full discretion to unilaterally add, modify, delete or otherwise change any provisions [or related policies and procedures] at any time without . . . ."  Id. at § 3.10.  Since the handbook states that it is not a contract for employment, it is unknown how it could modify or affect the Agreement, which is a contract for employment.  Further, Billings points to nothing in the handbook that purports to limit Ryze's ability to have an agent of its choosing sign a contract for employment.  As the name suggests, an employee handbook is meant to guide and inform an employee.  It makes no sense for Ryze to include a provision in the handbook that could invalidate a pre-existing employment contract.  Moreover, because Ryze can change or eliminate any provision or associated policy of the handbook unilaterally, there would be nothing to stop Ryze from accepting an employment contract that violates § 3.10 of the handbook.  That is, the ability to unilaterally change any provision of the handbook amounts to a very small (if any) limitation on the part of Ryze.  Assuming that § 3.10 was a limitation that affected Billings's Agreement, the fact that both Billings and Ryze performed under the contract for about 8 years indicates a unilateral change by Ryze with respect to Billings's Agreement.

Third, receipt of an employee handbook generally presupposes employment.  Since an employee handbook is meant for employees, it would make no sense for Ryze to provide Billings with the handbook if it did not consider Billings to already be a legitimate employee.

Finally, Billings's argument is novel, especially given the general nature of an employee handbook. Billings cites no cases that have applied similar language in an employee handbook to invalidate employment contracts that were otherwise in effect for years.

In sum, Billings has failed to show that § 3.10 invalidates the Agreement.

2.     Labor Code § 2802 and § 2804

In pertinent part, § 2802 reads: "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or though his or her obedience to the directions of the employer . . . ." Cal. Lab. Code § 2802(a). Section 2802 is "designed to prevent employers from passing their operating expenses on to their employees." Gattuso v. Harte-Hanks Shoppers, Inc., 42 Cal.4th 554, 562 (2007) (citation omitted). Pursuant to Labor Code § 2804, the rights afforded under § 2802 cannot be waived. Edwards v. Arthur Andersen LLP, 44 Cal.4th 937, 951 (2008); Gattuso, 42 Cal.4th at 562. Labor Code § 2804 ("§ 2804") provides in part: "Any contract or agreement, express or implied, made by any employee to waive the benefits of this article or any part thereof, is null and void . . . ." Cal. Lab. Code § 2804.

A clause in § 3 of the Agreement states that Billings is responsible for providing a digital camera and any other equipment needed to complete his job duties. The Agreement shows that part of Billings's employment duties with Ryze is to take photographs of claim sites. See Agreement §§ 3, 4(b). While there is no other equipment specifically identified, if the equipment is needed to complete job duties, then the expenditure for that equipment is in direct discharge of one's duties as a claims adjuster. Although the expense must be "reasonable" in order to qualify for indemnification, see Cal. Labor Code § 2802(c), both the digital camera and "other equipment" (whatever that may be) are expenses to which Billings is entitled to indemnification or reimbursement under § 2802(a). See Division of Lab. Stds. Enforcement – Enforcement Policies & Interpretations Manual, pp. 29-2 to 29-3 (December 2017) ("When tools or equipment are required by the employer or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer . . . ."); Division of Lab. Stds. Enforcement – Enforcement Policies & Interpretations Manual, pp. 45-12 to 45-13 (June 2002) (same).

Ryze relies heavily on the California Supreme Court's decision in *Edwards v. Arthur Andersen LLP* to argue that there is no waiver of indemnification rights for a camera or other equipment. The *Edwards* court was faced with a release that purported to release "any and all claims" by an employee. See Edwards, 44 Cal.4th at 950. While the Court of Appeal found that "any and all claims" necessarily included claims covered by § 2802, the California Supreme Court disagreed. The *Edwards* court explained that indemnity rights under § 2802 were not expressly waived in the release and then declined to read such a waiver into the release. See id. at 953-54. Instead, the court relied on the rule of contract interpretation that, where reasonable, a contract should be interpreted in such a way as to avoid illegality. See id. at 953-54. One reasonable interpretation of the release, and the interpretation adopted by the California Supreme Court, was that the term "any and all" did not encompass non-waivable statutory protections. See id. at 954.

In this case, whether § 3 of the Agreement actually waives indemnification for digital cameras and "other equipment" is not clear. On the one hand, the clause states that Billings is responsible for providing a camera and equipment, and a common understanding of the term "responsible" is that Billings is expected to pay for the equipment himself - period. Further, there is no express provision that permits an employee to seek indemnification for these costs. Significantly, the contract has a section that is entitled "Reimbursed Expenses." See Agreement at § 4(d). Several types of expenses and equipment/supplies are identified, but conspicuously absent from this list is any mention of a digital camera or "other equipment." The absence of these expenses from the list suggests that no compensation or reimbursement is authorized.

On the other hand, § 2802 is not mentioned or identified in the Agreement. While Billings is certainly responsible for obtaining the digital camera and other equipment (whatever equipment that may be), the contract does not expressly prohibit Billings from obtaining or attempting to obtain indemnification or reimbursement, nor does the contract expressly state that Ryze will not reimburse an employee for these expenses. Further, Billings brings a claim for violation of § 2802 based in part on this clause and alleges that he was not compensated for a digital camera. As Ryze correctly points out, there is no evidence or allegations concerning attempts to obtain reimbursement by Billings, and there have been no findings that any reasonable expenses were

actually submitted by Billings to Ryze but not reimbursed.[3]  Finally, although Billings submitted a declaration and evidence in support of other arguments, he submitted no evidence relating § 3 of the Agreement.[4]

The state of the briefing is such that the Court cannot definitively hold either that § 3 of the Agreement violates § 2802 or that Ryze utilizes § 3 in such a way as to violate § 2802.  In the absence of additional evidence from Billings regarding his experiences with § 3, or statements or materials by Ryze relating to § 3's interpretation or application, the Court cannot hold at this time that § 3 violates § 2802 as a matter of law.  Cf. Edwards, 44 Cal.4th at 950-54 (holding that if a reasonable and legal interpretation is possible, a contract should be interpreted in a way as to make the contract lawful).  Therefore, Billings has not shown that § 3 violates § 2802 and § 2804.

However, even if the Court were to assume that § 3 violates § 2802, Billings has not shown that § 2804 would invalidate the entire agreement.  In *Gattuso*, the California Supreme Court explained that § 2804 makes an agreement "null and void *insofar as* it waives the employee's rights to full expense reimbursement under § 2802."  Gattuso, 42 Cal.4th at 569-70 (emphasis added).  Similarly, in *Edwards*, the California Supreme Court stated that "any contract that does purport to waive an employee's indemnity right [under § 2802] would be contrary to the law and therefore unlawful *to that extent*."  Edwards, 44 Cal.4th at 951-52 (emphasis added).  The terms "insofar as" and "to that extent" create boundaries or limitations on the reach of § 2804.  Per *Gattuso* and *Edwards*, the Agreement in this case is not null and void in the entirety, rather, the Agreement would be null and void under § 2804 only insofar as, or only to the extent that, it waives the right of Billings to seek reimbursement for the reasonable cost of a digital camera.

---

[3] Ryze also argues that there has been no finding that an expense was "necessarily" incurred.  However, as stated above, the Agreement clearly envisions Billings taking photographs as part of his job duties.  Thus, the expense of a camera is necessarily incurred in order to perform claims adjusting.  Further, § 3 identifies "other equipment" that is "needed to complete" job duties.  If the equipment is needed to complete jobs duties, then necessarily the expense of obtaining that equipment is one that is incurred as part of the job.  As a matter of law, the digital camera and "other equipment" as envisioned in § 3 (to the extent that there actually is such equipment) is "necessary" under § 2802.

[4] Additionally, under a section entitled "Billable Photographs," the Agreement compensates Billings for certain photos.  See Agreement § 4(b).  The Court is unaware of the industry standard, but compensation for photos seems unusual from a "lay perspective," and may be a way of compensating Billings for the camera.  Cf. Gattuso, 42 Cal.4th at 567-71 (explaining that there are several different methods of compensating/indemnifying an employee under § 2802 for expenses related to automobiles).  However, no party has addressed § 4(b) of the Agreement.  Therefore, the Court makes no findings regarding § 4(b), other than to note the possible application of *Gattuso*.

That is, the entire Agreement would not be void, rather the relevant portion of § 3 would be void. Without more from Billings, the Court cannot hold that the Agreement is void pursuant to § 2804.

### 3. Unconscionability

Under California law, a contract as a whole or any part thereof may be unenforceable because it was "unconscionable at the time it was made." Cal. Civ. Code § 1670.5(a); Tompkins v. 23andMe, Inc., 840 F.3d 1016, 1023 (9th Cir. 2016). The party asserting that a contractual provision is unconscionable bears the burden of proof. See Poublon v. C.H. Robinson Co., 846 F.3d 1251, 1260 (9th Cir. 2017); Tompkins, 840 F.3d at 1023; Sanchez v. Valencia Holding Co., LLC, 61 Cal.4th 899, 911 (2015). Unconscionability has "both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." Sanchez, 61 Cal.4th at 910; see Poublon, 846 F.3d at 1260. However, procedural and substantive unconscionability need not be present in the same degree, rather, "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Armendariz v. Foundations Health Psychare Servs., Inc., 24 Cal.4th 83, 114 (2000); see Poublon, 846 F.3d at 1260. Procedural unconscionability focuses on "oppression or surprise due to unequal bargaining power," and generally arises from "an inequality of bargaining power that results in no real negotiation and absence of meaningful choice." Poublon, 846 F.3d at 1260. While California courts have described substantive unconscionability in numerous ways, each of the formulations point to the central idea that unconscionability "is concerned not with 'a simple old-fashioned bad bargain' but with terms that are 'unreasonably favorable to the more powerful party.'" Baltazar v. Forever 21, Inc., 62 Cal.4th 1237, 1244 (2016); see Poublon, 845 F.3d at 1261. "A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be so one-sided as to the shock the conscience." Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC, 55 Cal.4th 223, 246 (2012) (internal citation omitted); see also Woodside Homes of Ca., Inc. v. Superior Ct., 107 Cal.App.4th 723, 732 n.11 (2003) ("[A] provision which favors one side is not substantively unconscionable if the advantage is completely collateral to the issues surrounding a fair resolution of the dispute.").

If a court concludes that a contract contains one or more unconscionable clauses, it may: (1) refuse to enforce a contract that was "unconscionable at the time it was made," (2) "enforce the remainder of the contract without the unconscionable clause," or (3) "limit the application of any unconscionable clause as to avoid any unconscionable result." Cal. Civ. Code § 1670.5(a); Poublon, 846 F.3d at 1272. "A court may 'refuse to enforce the entire agreement' only when it is permeated by unconscionability." Poublon, 846 F.3d at 1272 (quoting Armendariz, 24 Cal.4th at 122). "If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." Id. (quoting Marathon Entm't, Inc. v. Blasi, 42 Cal.4th 974, 996 (2008)). Stated differently, if a court is unable to distinguish between the lawful and unlawful parts of a contract, then "the illegality taints the entire contract, and the entire transaction is illegal and unenforceable." Keene v. Harling, 61 Cal. 2d 318, 321 (1964). Courts consider whether the agreement contains more than one objectionable term (which may show a systematic effort to impose arbitration on an employee), whether the central purpose of the contract is tainted with illegality, and whether there is no single provision that the court can strike or restrict in order to remove the unconscionable taint from the agreement. Poublon, 846 F.3d at 1273.

### a.    Procedural Unconscionability

Billings has submitted a declaration that describes the Agreement with Eagle as follows: "It was my understanding that the terms of the [Agreement] could not be negotiated. I was informed and understood that I could not start working for Defendant until I signed the [Agreement]." Billings Dec. P. 4. Billings also declared that in March 2016, Ryze's human resources employees informed employees who received a new Agreement (that changed "Ryze" for "Eagle") to return the contract signed the next day. See id. at P. 7. As with the prior Eagle Agreement, Billings declares: "I understand that in order to continue my employment with [Ryze] I was required to sign the subsequent [Agreement]. It was my understanding that the terms of the subsequent [Agreement] could not be negotiated." Id. at P. 8.

A contract of adhesion is a "standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to

the contract or reject it."  Poublon, 846 F.3d at 1261; Armendariz, 24 Cal.4th at 113.  Where

employment is dependent upon the acceptance of an adhesion contract, there is procedural

unconscionability.  Ajamian v. CantorCO2e, L.P., 203 Cal.App.4th 771, 796 (2012).

Here, Billings's declaration indicates that the Agreement is a contract of adhesion.  Ryze

argues that Billings never states that he attempted to change the contract and he merely states that

it was his "understanding" that he had no choice but to sign it.  Ryze makes too much of the term

"understanding."  The clear import of the declaration is that Billings could not negotiate and that

he had to sign the Agreement.  Billings's declaration is enough to shift the burden to Ryze.  If the

Agreement was subject to negotiation, or if Billings was not given the contract on "a take or leave

it" basis, Ryze could have easily submitted a declaration that so stated.  A flat denial and

explanation of the Agreement that affirmatively disproves the adhesive nature indicated by

Billings would clearly be within Ryze's power to submit, but Ryze did not submit such a

declaration.  Without contrary evidence from Ryze, there is an insufficient basis for the Court to

discount Billings's "understanding."  Therefore, the Agreement is a contract of adhesion and there

is procedural unconscionability.  See Poublon, 846 F.3d at 1261; Baltazar, 62 Cal.4th at 1245;

Armendariz, 24 Cal.4th at 113; Ajamian, 203 Cal.App.4th at 796.

However, "if an employee must sign a non-negotiable employment agreement as a

condition of employment, but 'there is no other indication of oppression or surprise,' then 'the

agreement will be enforceable unless the degree of substantive unconscionability is high.'"

Poublon, 846 F.3d at 1261 (quoting Serpa v. Cal. Sur. Investigations, Inc., 215 Cal.App.4th 695,

704 (2013)); Ajamian, 203 Cal.App.4th at 796.  Billings has not identified any other aspect of

"surprise" or "oppression," other than clauses that are also identified as part of Billings's

arguments regarding "substantive unconscionability."  Accordingly, the Court will analyze those

clauses as part of the substantive unconscionability analysis.

b.    Substantive Unconscionability

(1)    Insufficient Signature

Billings reiterates his argument that the Agreement is void because an owner of Ryze did

not sign the Agreement, and that this shows substantive unconscionability.

As discussed above, Billings has not shown that the signature by a non-owner employee of Ryze renders the Agreement void. For the same reasons discussed above, Billings has failed to show that § 3.10 of the Ryze Employee Handbook invalidates the Agreement or somehow renders the Agreement in any way unconscionable.

(2)     Forum Selection Clause

Although neither Billings nor Ryze has cited any cases that have addressed a clause like the forum selection clause in this case, the Court finds that several aspects of the clause are noteworthy.

First, Indiana is a designated forum for claims against Billings, whereas two counties and one federal judicial district in Indiana are the designated forums for claims against Ryze. Billings does not address this particular aspect of the clause. For Billings's purposes, it presumably makes little difference if Ryze brought suit against him in Marion County, Hamilton County, or a non-specified county such as Wells County. In the absence of argument or evidence from Billings on this point, the Court does not find that the forum selection clause's treatment of Indiana as a forum is so unduly one-sided or "conscious shocking" that it is substantively unconscionable. See Pinnacle Museum, 55 Cal.4th at 246.

Second, the forum selection clause also designates any state where Billings is subject to personal jurisdiction as a proper forum for claims against him. There is no reciprocal provision for Ryze, rather the Agreement only permits Billings to sue Ryze in Indiana. While this is a one-sided provision, it does not shock the conscience. Irrespective of the Agreement, personal jurisdiction is a constitutional requirement that any plaintiff must meet for any defendant. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 (1980). That is, if the forum selection clause did not exist, Ryze could only bring suit against Billings in a state that could exercise general or specific personal jurisdiction over him. See id. The requirement of personal jurisdiction is a requirement that is meant to protect the interests of a defendant by ensuring that the defendant is not hauled into a distant and inconvenient forum to which he has little or no connection. Id. This aspect of the forum selection clause recognizes existing law and inures to the benefit of Billings. The Court does not find this aspect of the forum selection clause to be so one-

13

sided that it shocks the conscience and is substantively unconscionable.  See Pinnacle Museum, 55

Cal.4th at 246; see also Tura v. Med. Shoppe Int'l, 2010 U.S. Dist. LEXIS 151310, *34-*35 (C.D.

Cal. Mar. 3, 2010) (finding a provision that permitted the employee to file suit in Missouri but

permitted the employer to file suit in either Missouri or California did not shock the conscience).

Third, the forum selection clause contains a potentially far reaching provision – Billings

can be sued by Ryze in any state where one of his assigned clients resides. *Theoretically*, this

opens Billings up to litigation in all 50 states.  The provision is not tied necessarily to where

Billings performed work, it is not tied to his residence, and it is not tied to Ryze's corporate "home

state."  Although the forum selection clause states that such a forum may be necessary, there is no

further elaboration and it is not clear why litigation against Billings in a client's home state would

be necessary.  Without further explanation or elaboration that could justify this aspect of the forum

selection clause, the Court's conscience is shocked.  Despite exposing Billings to potentially

numerous distant and inconvenient forums, Ryze has limited the locations where it can be sued to

two Indiana counties and one division of one federal court, i.e. just part of Indiana.  The portion of

the forum selection clause that designates any forum in which one of Billings's assigned clients

resides as a forum to sue Billings is substantively unconscionable.

(3)   <em>De Facto</em> Waiver

Generally, "California courts will enforce adequate forum selection clauses that apply to

non-waivable statutory claims, because such clauses do not waive the claims, they simply submit

their resolution to another forum."  Huddleston v. John Christner Trucking, LLC, 2017 U.S. Dist.

LEXIS 160218, *26 (E.D. Cal. Sept. 28, 2017); Robles v. Comtrak Logistics, Inc., 2015 U.S. Dist.

LEXIS 44323, *12-*13 (E.D. Cal. Apr. 2, 2015); Perry v. AT&T Mobility, LLC, 2011 U.S. Dist.

LEXIS 102334, *15 (N.D. Cal. Sept. 12, 2011).  However, "if the forum is not adequate, a forum

selection clause that applies to a non-waivable statutory claim may, in fact, improperly compel the

claimant to forfeit his or her statutory rights.  In such a case, the forum selection clause is contrary

to the strong public policy of California and will not be enforced."  Huddleston, 2017 U.S. Dist.

LEXIS 160218 at *26; Robles, 2015 U.S. Dist. LEXIS 44323 at *13; Perry, 2011 U.S. Dist.

LEXIS 102334 at *15-*16.  Thus, when a forum selection clause works in tandem with a choice of

14

law clause to effectively waive an otherwise non-waivable statutory right in violation of state public policy, courts may consider this effect and decline to enforce the forum selection clause. See Doe 1 v. AOL, LLC, 552 F.3d 1077, 1084-85 (2009) (interpreting and relying on America Online, Inc. v. Superior Ct. of Alameda Cnty., 90 Cal.App.4th 1 (2001)); Huddleston, 2017 U.S. Dist. LEXIS 160218 at *26; Kabbash v. Jewelry Channel, Inc. USA, 2016 U.S. Dist. LEXIS 190563, *8 (C.D. Cal. Feb. 22, 2016); Robles, 2015 U.S. Dist. LEXIS 44323 at *13; Bayol v. Zipcar, Inc., 2014 U.S. Dist. LEXIS 135953, *5 (N.D. Cal. Sept. 25, 2014); Perry, 2011 U.S. Dist. LEXIS 102334 at *11-*12.

Billings contends that Indiana does not have a number of the California Labor Code protections that are at issue in this case, and that by reason of Indiana's choice of law doctrine and the Agreement's choice of Indiana law, the Indiana courts (both state and federal) will apply Indiana's choice of law theories as a matter of course and will not enforce the Labor Code provisions. Billings relies primarily on *Allen v. Great Am. Reserve Ins. Co.*, 766 N.E.2d 1157, 1162 (Ind. 2002).[5]

The parties do not argue that Billings's claims fall outside the scope of the forum selection clause. Indeed, the clause is extremely broad and covers "any claim by [Billings] against Ryze." See Agreement § 8(c). The issue is how the forum selection clause will interact with the choice of law clause. After consideration, the Court is not convinced that the forum selection clause will interact with the choice of law clause to result in the waiver of non-waivable California rights.

First, as stated above, the Agreement's choice of law clause reads that the "Agreement shall be construed in accordance with and governed by the law of the State of Indiana . . . ." Agreement § 8(b). In *Huddleston*, Chief Judge O'Neill of this district confronted a materially identical clause: "This Agreement shall be interpreted in accordance with, and governed by the laws of the United States and, of the State of Oklahoma . . . ." Huddleston, 2017 U.S. Dist. LEXIS

---

[5] Billings also cites *St. Paul Travelers Cos. V. Corn Island Shipyard*, 495 F.3d 376 (7t h Cir. 2007) and *Executive Mgmt. Svcs., Inc. v. Fifth Third Bank*, 2014 U.S. Dist. LEXIS 30282, (S.D. Ind. Mar. 7, 2014). *St. Paul* was an insurance coverage dispute in which the Seventh Circuit relied on *Allen* to apply New York law, per a contractual clause in the insurance policy. See St. Paul Travlers, 495 F.3d at 380, 383. *Executive Mgmt.* was a contract dispute in which *Allen* was cited to apply New York law, per a contractual clause. *Executive Mgmt.*, 2014 U.S. Dist. LEXIS 30282 at *5. Billings, *St. Paul Travelers*, and *Executive Mgmt.* all cite to page 1162 of *Allen*.

160218 at *3-*4.  *Huddleston* found that this language meant that "Oklahoma law applies only to interpretation of the [contract] itself."  Id. at *28 (citing LaCross v. Knight Transp., Inc., 95 F.Supp.3d 1199, 1206 n.4 (C.D. Cal. 2015)).  With respect to the California Labor Code claims at issue, *Huddleston* noted that those claims existed without regard to the substance of any contractual obligations, did not arise out of the contract, did not involve the interpretation of any contract terms, and did not even require that there be a contract in the first place.  See id. at *28-*29 (citing and relying on Narayan v. EGL, Inc., 626 F.3d 895, 899 (9th Cir. 2010)).  That is, any violation of the Labor Code would be determined by examining the code provisions themselves, not the contract.  See id.  Chief Judge O'Neill ultimately enforced the forum selection clause and transferred the case to a federal court in Oklahoma.  See id. at *35-*36.

Here, the same analysis would apply.[6]  The Agreement's choice of law provision is limited to interpretation and enforcement of the Agreement itself.  Billings's statutory claims are separate and independent from the Agreement and do not depend upon or require the interpretation of the Agreement or any contract for enforcement.  See Narayan, 626 F.3d at 898-99; Huddleston, 2017 U.S. Dist. LEXIS 160218 at *28-*29.  Thus, the California Labor Code claims are outside the scope of the choice of law clause.  Huddleston, 2017 U.S. Dist. LEXIS 160218 at *28-*29.

Second, *Huddleston* and another Eastern District Case, *Robles v. Comtrak Logistics, Inc.*, involved the California Labor Code and transfers to the Northern District of Oklahoma and the Western District of Tennessee, respectively.  In both cases, arguments that the Labor Code protections would be lost upon transfer were rejected.  See Huddleston, 2017 U.S. Dist. LEXIS at *27-*31 (holding that the California Labor Code claims were outside of the choice of law clause);

---

[6] Billings argues that the Court should not follow *Huddleston* because the contract in that case was for an independent contractor relationship.  Instead, Billings argues that the Court should follow *Monastiero v. Appmobi, Inc.*, 15 F.Supp.3d 956 (N.D. Cal. 2014), which involved an employment contract, like this case.  However, the plaintiff's status as an employee or independent contractor was at issue in *Huddleston* and the court found that the federal Oklahoma court was capable of applying the California Labor Code.  See Huddleston, 2017 U.S. Dist. LEXIS 160218 at *27-*30.  Moreover, *Huddleston*'s reading of the choice of law clause in that case did not depend on the type of contract.  Rather, *Huddleston* examined the language and found that the choice of law clause was narrow and applied to contract interpretation.  See id.  The language of the choice of law clause in this case is materially identical to *Huddleston*.  Additionally, as Ryze correctly points out, reconsideration was granted in *Monastiero* and a different result was reached.  See Monastiero v. Appmobi, Inc., 2014 U.S. Dist. LEXIS 6702 (N.D. Cal. May 15, 2014).  The Court declines to follow a district court order that was essentially withdrawn due to a grant of reconsideration.  The Court finds *Huddleston* persuasive and will follow its rationale.

Robles, 2015 U.S. Dist. LEXIS 44323 at *13-*14 (holding that there was insufficient evidence that the federal court in Tennessee was incapable of enforcing the Labor Code protections). Here, Billings relies on *Allen* to argue that Indiana courts will apply the Agreement's choice of Indiana law to defeat his California Labor Code claims. In other words, the Court understands Billings to rely on *Allen* to argue that Indiana is an inadequate forum that is not capable of enforcing the California Labor Code.

In *Allen*, insurance salesmen (who were licensed in North Carolina or South Carolina) sued their recruiter/supervisor and their employing insurance company based on the salesmen's belief that they were selling "no load" policies, when in fact the policies were "load policies." See Allen, 766 N.E.2d at 1161-62. The contract between the salesmen and the insurance company contained a forum selection clause that provided, "for any action between the parties arising under this [contract]," venue was Hamilton County, Indiana. Id. at 1160. The contract also stated that it was to be "construed in accordance with the laws of the State of Indiana exclusive of choice of laws provisions." Id. The plaintiffs brought suit in Hamilton County, Indiana.[7] See id. at 1161. The Indiana Supreme Court noted that the plaintiffs had brought twelve counts in their complaint, and that it was necessary to determine for each count which state's law applied. See id. at 1162. With respect to Count I for breach of contract accompanied by a fraudulent act, as against the insurance company, the *Allen* court noted that "Indiana choice of law doctrine favors contractual stipulations as to governing law," and thus, the "contractual provision that Indiana law governs the construction of the contract is controlling on the choice of law issue." Id. The contract therefore required that Indiana law apply to the insurance company. See id. at 1162-63. However, with respect to the supervisor, the salesmen alleged a breach of good faith and fair dealing arising out of an agency relationship between the supervisor and the insurance company (the salesmen had no contract with the supervisor). See id. at 1163. The Indiana Supreme Court adopted § 291 of the Restatement (Second) of Conflict of Laws, which provides: "if the agent is employed to do a number of acts on the principal's behalf in a single state, the local law of this state will usually

---

[7] The salesmen first attempted to bring suit in a South Carolina federal court, but that case was dismissed for improper venue and lack of diversity jurisdiction. See Allen, 766 N.E.2d at 1160. The salesmen then refiled their suit in Hamilton County, Indiana. See id.

determine the rights and duties owed by the principal and agent to each other." Id. Because the supervisor's conduct and relationship with the plaintiffs occurred substantially in South Carolina, the law of South Carolina governed the claims against the supervisor. See id. With respect to Count II for common law fraud, the Indiana Supreme Court followed *lex loci delicti*[8] and applied South Carolina law. See id. at 1164-65. In Counts III, IV, and V, Indiana statutory claims were alleged (statutory fraud, deception, and criminal mischief). See id. at 1165. The lower court in part found that South Carolina law governed and dismissed the claims. See id. However, the Indiana Supreme Court held in relevant part that there was "no doubt that Indiana law applies to a claim under an Indiana statute." Id. at 1166. With respect to the insurance company, because the alleged acts of the insurance company that violated the statutes occurred in Indiana, the Indiana statutes applied. See id. However, with respect to the supervisor, because the alleged conduct that violated the statutes occurred in South Carolina, the Indiana statutes did not apply. See id. In Count VI, the Court applied North Carolina law to a North Carolina Unfair Trade Practices Act, because one salesman was a North Carolina resident who sold policies in North Carolina. See id. at 1167. In Count VII, the Court applied South Carolina law to a claim by South Carolina plaintiffs for violation of the South Carolina Unfair Trade Practices Act and reversed a summary judgment order that was in favor of the insurance company. See id. at 1167-68. For Counts VIII, IX, and X, a civil conspiracy claim, a tortious interference with business relationship claim, and a negligence claim, South Carolina law was applied through operation of *lex loci delicti*. See id. at 1168-69. For Count XI, common law indemnification, the Indiana Supreme Court noted that, while the contract between the salesmen and the insurance company provided for the indemnification of the company by the salesmen, there was no reciprocal provision. See id. at 1169. Because any right to indemnity from the insurance company to the salesmen arose through operation of agency principles (between the company and the supervisor) and not the contract, § 291 of the Restatement operated to apply South Carolina common law. See id. at 1169-70.[9]

---

[8] *Lex loci delicti* means "the law of the place where the tort or other wrong occurred." Black's Law Dictionary (10th ed.) p.1051.

[9] The twelfth cause of action was for an accounting, but no party challenged the rulings of the lower court. Therefore, the Indiana Supreme Court conducted no substantive analysis of that claim. See Allen, 766 N.E.2d at 1170.

18

In light of *Allen*, the Court cannot hold that Indiana is an inadequate forum or a forum that will not apply the California Labor Code. *Allen* indicates that the Indiana Supreme Court will apply Indiana contract law to contract claims when there is a contractual clause that designates Indiana law as controlling the contract.[10] That is what the Indiana Supreme Court did with the breach of contract claim against the insurance company. See id. at 1162. However, when confronted with claims that were not contractually based, *Allen* generally looked to where the alleged misconduct occurred. South Carolina and North Carolina statutory consumer protection laws were applied because the conduct at issue involved "Carolina" plaintiffs and significant misconduct that occurred in either North or South Carolina. Similarly, the Indiana statutory claims were applied only to the insurance company because only the insurance company's misconduct occurred in Indiana. Relative to this case, Billings is a California resident who is invoking California statutory protections in relation to the work he performed in California and for conduct against him in California. *Allen* indicates that Indiana courts would hear Billings's California statutory claims and follow California law. Further, with respect to the indemnification claim, the Indiana Supreme Court noted that although the contract did address indemnification, the contract only provided indemnification for the insurance company. Significantly, *Allen* recognized that the duty owed to the plaintiffs came from a source outside of the contract, the common law. Here, the alleged protections of the California Labor Code do not derive from or depend upon the Agreement. Rather, the protections exist by virtue of an employment relationship, not by virtue of a contractual relationship. See Narayan, 626 F.3d at 898-99; Huddleston, 2017 U.S. Dist. LEXIS 160218 at *28-*29. In addition to the connection to California just described, the independent nature of Billings's statutory claims further suggests that Indiana courts following *Allen* would recognize and apply the California Labor Code.

It is Billings's burden to demonstrate unconscionability, see Poublon, 846 F.3d at 1260, and it is also Billings's burden to demonstrate that a transfer would violate California public policy. See Atlantic Marine Construction Co. v. United States Dist. Ct., 571 U.S. 49, 63 (2013)

---

[10] The portion of *Allen* that was relied upon by Billings involved Count I, for breach of contract. Billings did not discuss *Allen*'s treatment of any other cause of action.

(in the context of § 1404(a), holding that the party resisting transfer under a forum selection clause bears the burden of showing a violation of public policy).  Billings has essentially relied on an isolated portion of *Allen* to argue that a transfer to Indiana would create a de facto waiver of non-waivable California statutory rights.  However, the actual analysis in *Allen* indicates that Indiana courts would apply the California Labor Code to Billings's Labor Code claims.  Therefore, Billings has not demonstrated that Indiana is an inadequate forum and thus, has not demonstrated a de facto waiver of non-waivable rights.

(4)    <u>Labor Code § 2802 and § 2804</u>

Billings reiterates his arguments that § 3 of the Agreement violates § 2802 and § 2804.

The Court's above analysis applies here as well.  Billings has not demonstrated that § 2802 has been violated.  Without a violation of § 2802, the Court cannot hold that § 3 is substantively unconscionable.  Cf. <u>Gutierrez v. Carter Bros. Sec. Servs., LLC</u>, 63 F. Supp. 3d 1206, 1214 (E.D. Cal. 2014) (finding a provision that violated § 2802 to be substantively unconscionable).

(5)    <u>Fee Shifting Provision</u>

Billings argues that the Agreement shifts the cost of any legal proceeding to him.  Ryze argues that this is incorrect, rather the clause only applies if Ryze institutes a legal action against Billings for a breach of the Agreement.

The Court finds that Ryze's interpretation of the Agreement is reasonable and correct.  By the clear language of the Agreement at § 7, Billings is liable for costs of litigation only with respect to lawsuits brought by Ryze for the breach of the Agreement.  <u>See</u> <u>Berendes v. Farmers Ins. Exchange</u>, 221 Cal.App.4th 571, 577 (2013) (holding that clear and explicit terms govern); <u>P.R. Mallory & Co. v. American Cas. Co.</u>, 920 N.E.2d 736, 749 (Ind. Ct. App. 2010) (holding that clear and unambiguous language should be given plain and ordinary meaning).

Nevertheless, that not every type of legal action is encompassed by the "costs" clause does not fully address the issue.  The problem with the clause is that the language only permits Ryze to recover the costs of a legal proceeding.  No provision is made for Billings to obtain his costs under any circumstances.  The clause is clearly one-sided and benefits Ryze.  As written, the clause is unconscionable.  <u>Carmona v. Lincoln Millennium Car Wash, Inc.</u>, 226 Cal.App.4th 74, 88 (2014).

c.      Enforcement/Severance

From the above, there is a low level of procedural unconscionability, but there are some substantively unconscionable provisions.  The Agreement permits courts to sever any "unlawful" provisions, see Agreement § 8(a), and the Court has the discretion to sever or limit unconscionable clauses.  See Cal. Civil Code § 1670.5; Poublon, 846 F.3d at 1272.  The Court must determine whether the Agreement is so permeated with unconscionability that severing the unconscionable clauses will make the contract sufficiently lawful and conscionable.  Severance is determined by examining the unconscionable provisions in relation to the purpose of the contract.  See Poublon, 846 F.3d at 1272.  There does not appear to be an ironclad rule in California that makes a contract per se unconscionable and not capable of being saved through severance or restriction.  See id. at 1272-74.

(1).     Purpose

In this case, the purpose of the Agreement is to establish an employment relationship between Billings and Ryze, including establishing a system of compensation.  See Agreement "Recitals"; Defendant's Reply at 12:21-23.

(2)      § 8(c) - Forum Selection Clause

Only one portion of the § 8(c) forum selection clause is unconscionable.  As discussed above, designating any state in which a Ryze client who was assigned to Billings resides is too one-sided.  However, this portion of the forum selection clause does not relate to any duties or compensation of Billings as an employee or to duties by Ryze as an employer; it would only have application in the event that Ryze sues Billings.  The portion of the clause appears to be a relatively minor term in the overall structure of the Agreement.  Severing this portion of the forum selection clause will not affect the purpose of Agreement and will remove an unconscionable provision. Therefore, the Court will sever and strike the portion of the forum selection clause that relates to the location of Ryze clients.

(3)      § 3 - Digital Camera & "Other Expenses"

As discussed above, Billings has not sufficiently shown that § 3 of the Agreement violates § 2802.  But, even if that clause did violate § 2802, severance would be appropriate for two

reasons. First, severing § 3 would be consistent with the California Supreme Court's discussions in *Gattuso* and *Edwards*. These cases indicate that the Agreement is not totally void, rather it is only void to the extent that or insofar as it waives indemnity for the digital camera and unknown "other expenses." See Edwards, 44 Cal.4th at 951-52; Gattuso, 42 Cal.4th at 569-70. Severance would implement the limiting effect described in *Gattuso* and *Edwards*. Second, while § 3 unlawfully passes some business expenses of Ryze over to Billings, the only expense that is known and capable of clear consideration is for a digital camera.[11] However, the Agreement does expressly provide reimbursement for other necessary equipment and expenses. See Agreement §§ 4(b), (c), (d), (e), (f). Considering that only one identifiable expense is excluded for reimbursement, severing that limitation would realign the contract with § 2802 and keep the Agreement's otherwise valid purpose of establishing an employment relationship intact. Therefore, to the extent that § 3 waives or prohibits an employee from seeking reimbursement for the reasonable costs of a digital camera or "other equipment," § 3 would be severed.

(4)    § 7 – Fee Clause

The fee shifting provision of § 7 is unconscionable because it is clearly one sided in favor of Ryze. The parties briefing is based almost exclusively on California law concerning unconscionability. A review of California courts that have addressed this type of fee clause in the context of unconscionability have reached different conclusions based on the applicability of California Civil Code § 1717 ("§ 1717"). Section 1717 makes one-sided attorneys' fees clauses reciprocal by legally interpreting the clause to apply to the "prevailing party," irrespective if that party is actually named in the clause.[12] See Santisas v. Goodin, 17 Cal.4th 599, 610-11 (1998). Section 1717 was "enacted to establish mutuality of remedy where [a] contractual provision makes

---

[11] While § 7 includes "other equipment," the parties do not explain what that equipment would be, and Billings's Complaint does not allege a claim based on "other equipment." The Agreement addresses a number of expenses and equipment that are necessary for Billings to perform his job as an adjuster, but Ryze supplies those items or provides reimbursement. Without further information from Billings, the Court will not speculate as to what the "other equipment" referenced in § 3 would be.

[12] California Civil Code § 1717 in pertinent part provides: "[W]here the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." Cal. Civ. Code § 1717(a).

22

recovery of attorney's fees available for only one part . . . and to prevent oppressive use of one-sided attorney's fees provisions . . . ." <u>Tract 19051 Homeowners Ass'n v. Kemp</u>, 60 Cal.4th 1135, 1146 (2015). Some courts have held that § 1717 saved one-sided or unilateral clauses by making them reciprocal and applying them to the prevailing party, <u>see</u> <u>Syson v. Montecito Bank & Tr.</u>, 2016 Cal.App.Unpub. LEXIS 5027, *9-*13 (July 6, 2016);[13] <u>Blosser v. Sheibani</u>, 2005 Cal.App.Unpub. LEXIS 3461, *26-*28 (2005); <u>Severtson v. Williams Construction Co.</u>, 173 Cal.App.3d 86, 95 (1985), while other courts have held that § 1717 did not save a one-sided fee clause. <u>See</u> <u>Carmona</u>, 226 Cal.App.4th at 88; <u>Samiengo v. Empire Today</u>, 205 Cal.App.4th 1138, 1147 (2012). The difference between these cases appears to be whether the contract at issue was otherwise so unconscionable that it was invalid. In *Carmona* and *Samiengo*, the one-sided fees clause was one of several unconscionable provisions that served to make those contracts unconscionable and unenforceable. <u>See</u> <u>Carmona</u>, 226 Cal.App.4th at 88-89; <u>Samiengo</u>, 205 Cal.App.4th at 247-48. In *Syson*, *Blosser*, and *Severtson*, the contracts were not sufficiently unconscionable. <u>See</u> <u>Syson</u>, 2016 Cal.App.Unpub. LEXIS 5027 at *9-*13; <u>Severtson</u>, 173 Cal.App.3d at 95-96; <u>Blosser</u>, 2005 Cal.App.Unpub. 3461 at *37.[14] Utilization of § 1717 benefited or potentially benefitted the unidentified party in those cases. <u>See id.</u> From *Carmona* and *Samiengo*, if the contract is too permeated with unconscionability and cannot otherwise reasonably be saved through severance or other limitation, then § 1717 will not operate as a sufficient limitation on a one-sided fee clause. From *Severtson*, *Blosser*, and *Syson*, if a contract is capable of being "saved" despite the presence of some unconscionability or is otherwise not unconscionable, then § 1717 will operate to transform a one-sided fee clause.

In this case, the only other unconscionable provision (part of the § 8(c) forum selection clause) will be severed. This would ordinarily mean that the Court would follow *Severtson*, *Blosser*, and *Syson* and hold that § 1717 operates on § 7 of the Agreement to make it applicable to

---

[13] Despite state rules, the Court may consider unpublished state cases as persuasive authority. <u>See</u> <u>Employers Ins. of Wausau v. Granite State Ins. Co.</u>, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003); <u>Robles v. Agreserves, Inc.</u>, 158 F.Supp.3d 952, 976 n.12 (E.D. Cal. 2016).

[14] The Court notes that *Syson*, *Carmona*, *Samiengo*, *Blosser*, and *Severtson* are all arbitration cases. Further, while unconscionability was raised each of these cases, save for *Severtson*. However, while *Severtson* did not actually discuss unconscionability, it cannot be argued that the contract in *Severtson* was held to be unconscionable.

Billings, thus curing any substantive unconscionability.  However, the Court has significant

concern over the actual applicability of § 1717.[15]

The Agreement states that it is to be construed in accordance with and governed by Indiana

law.  See Agreement § 8(b).  Neither party has cited or attempted to apply Indiana law regarding

either unconscionability in general or one-sided fee provisions in particular.  While the parties cite

some Indiana authority in their briefing, the citations are few and irrelevant to the issue of

unconscionability.  The Court's limited research indicates that Indiana does not have a statutory

provision that is similar to § 1717.  Without a statute or common law rule that tracks § 1717, it is

not at all clear that Indiana courts would apply § 1717 and view § 7 as mutual.

Additionally, apart from the possible inapplicability of § 1717, there is no apparent benefit

to Billings in this case in making § 7 mutual.  Section 7 is a limited fee clause that only operates to

award attorneys' fees following litigation on what essentially amounts to a breach of contract

claim.  See Agreement § 7.  Billings brings state and federal statutory claims against Ryze, he

does not bring a breach of contract claim.  See Doc. No. 1 at FAC.  Even if Billings prevails on all

of his claims, § 7 and § 1717 could not operate together to form the basis of an attorneys' fee

award.  Therefore, § 7 of the Agreement has no relevance to this case, other than with respect to

the issue of unconscionability.  Severing the provision would not harm Billings's claims or efforts

to obtain damages or attorneys' fees.

Finally, like the forum selection clause, the fee clause would apply only if a legal dispute

was litigated between Billings and Ryze.  The fee clause does not affect any terms or employment

or compensation, and severing the clause would maintain the purpose of the Agreement.

Given the concerns regarding § 1717's applicability, as well as the irrelevance of § 7 to the

claims in this case and § 7's limited (if any) relevance to the general purpose of the Agreement,

the Court will sever the fee clause of § 7.

### d.    Conclusion

The Court will sever the objectionable portions of § 3 and § 7.  The severance of these

---

[15] The parties do not cite § 1717, but both sides rely extensively on California law with respect to unconscionability.  As discussed above, California courts at least consider § 1717 in the context of unconscionability.

provisions maintains the purpose of the agreement and eliminates unconscionability. With the severance of these provisions, there is an insufficient amount of procedural unconscionability to invalidate the entire Agreement. Therefore, Billings has not shown that the Agreement is void as unconscionable.

II.     Validity Of The Forum Selection Clause

1.     Violation of Public Policy

A court will not enforce a forum selection clause if *inter alia* "enforcement would contravene a strong public policy of the forum in which suit is brought." In re Icenhower, 757 F.3d 1044, 1051 (9th Cir. 2014); Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1140 (9th Cir. 2003).

Billings argues that the Agreement's choice of law clause works in tandem with the forum selection clause to produce a waiver of his non-waivable California statutory rights/protections.

The Court has already addressed this argument in resolving unconscionability. As discussed above, Billings has not shown that *Allen* leads to a waiver of any rights (in fact, the analysis in *Allen* indicates that the opposite is true), and the rationale of *Huddleston* shows that Billings's Labor Code claims exist apart from the Agreement. Therefore, Billings has not sufficiently demonstrated that enforcement of the forum selection clause would violate California public policy.

2.     Overreaching

A forum selection clause will not be enforced *inter alia* "if the inclusion of the clause in the agreement was the product of fraud or overreaching." Petersen v. Boeing Co., 715 F.3d 276, 280 (9th Cir. 2013); Murphy, 362 F.3d at 1140. To establish invalidity under this method, "the party resisting enforcement must show that the inclusion of that clause in the contract was the product of fraud or coercion." Petersen, 715 F.3d at 282.

Billings reasserts each argument made with respect to unconscionability. However, as discussed above, Billings has not demonstrated that the Agreement is sufficiently unconscionable so as to be invalid. Moreover, the only argument made with respect to unconscionability that

would support an argument that the forum selection clause was included as a result of fraud or overreaching is that Billings was required to sign the Agreement in order to be hired. However, that situation is no different than that described in by the Ninth Circuit in *Murphy*:

> As for the allegation of "overreaching," a potential ground short of fraud, we conclude that Murphy has alleged insufficient facts to evade the consequences of his forum selection choice. [A] differential in power or education on a non-negotiated contract will not vitiate a forum selection clause. Moreover, there is no evidence of overreaching beyond Murphy's assertion: Murphy signed a new contract with a similar forum selection clause each year from 1992 to at least 1996. If, as Murphy asserts, Schneider told him that the contract was not negotiable, Murphy had the opportunity to seek work with other employers if he opposed the forum selection clause. Murphy's assertions reduce to a claim of power differential and non-negotiability. This evidence, even accepted as true . . ., is not enough to overcome the strong presumption in favor of enforcing forum selection clauses. To decline enforcement of a forum selection merely on the showing of non-negotiability and power difference made by Murphy would disrupt the settled expectations of the parties here and would threaten the ability of employers to require that disputes with their employees normally be settled in their neighborhood, absent some other exigency.

Murphy, 362 F.3d at 1141. In other words, Billings has simply demonstrated a differential in bargaining power and non-negotiability, which is insufficient. See id.

III.    § 1404 Considerations

Generally, in evaluating a § 1404 motion to transfer venue, courts weigh various public and private interest factors. See Atlantic Marine Constr. Co. v. United States Dist. Ct., 571 U.S. 49, 62-63 (2013); see also Critters of the Cinema, Inc. v. Nestle Purina Petcare Co., 2016 U.S. Dist. LEXIS 68219, *10-*12 (E.D. Cal. May 24, 2016) (identifying and examining numerous public and private interest factors). However, when there is an attempt to enforce a forum selection clause, the traditional § 1404(a) framework changes. See Atlantic Marine, 571 U.S. at 63. The plaintiff's choice of forum is given no weight, the "private interest factors" are deemed to weigh in favor of the forum identified in the forum selection clause, and a transfer will not carry the original venue's choice of law rules. Id. at 63-64. A valid forum selection clause is "given controlling weight in all but the most exceptional circumstances." Id. at 63. The party acting in violation of a forum selection clause "bears the burden of showing that the public-interest factors overwhelmingly disfavor a transfer." Id. at 66.

Here, the Court has found that the relevant portion of the forum selection clause that designates Indiana as the proper forum is valid. Pursuant to *Atlantic Marine*, all private interest factors weigh in favor of transferring the case to the SDI.[16] See id. at 63-64. Billings argues that the localized interests, the familiarity with governing law, and California's public policy overwhelmingly weigh against a transfer.

With respect to local interest in the controversy, there are two relevant aspects of this case. The first aspect involves the claims by Billings as an individual and as a representative of a putative class of California plaintiffs. Those claims are predominantly based on violations of the California Labor Code and are based on conduct occurring in California. The state of California undoubtedly has a substantial interest in such claims. However, the other aspect involves claims brought by Billings as a representative of a nationwide class based on violations of federal law. For those claims, the state of Indiana has a substantial interest because one of its corporations is the subject of a class action that literally spans all 50 states. Given the two aspects of Billings's case, the Court cannot hold that California has a greater interest in this case than Indiana, or vice versa. Therefore, this is a neutral factor that neither weighs in favor nor weighs against a transfer from to the SDI.

With respect to familiarity with governing law, Billings brings eight California statutory claims and two federal statutory claims. While both the EDC and the SDI are equally familiar with the two Fair Labor Standards Act claims, the EDC is more familiar with the eight California statutory claims than is the SDI. This factor weighs against a transfer to the SDI.

Finally with respect to the public policy concerns, Billings contends that the Agreement results in a waiver of non-waivable California Labor Code rights. Again, the Court has determined that Billings has not demonstrated that such a waiver would occur. *Allen* does not indicate that Indiana Courts would fail to apply the California Labor Code. Therefore, this is a neutral factor that neither weighs in favor nor weighs against a transfer to the SDI.

---

[16] Billings has addressed the private interest factors in his opposition. However, *Atlantic Marine* prohibits weighing these factors against a transfer. See Atlantic Marine, 571 U.S. at 63-64. Therefore, the Court will not address the substance of Billings's arguments. See id.

Of the three public interest factors that Billings has identified, two are neutral and one weighs against a transfer to the SDI. The familiarity with the controlling law alone does not come close to outweighing all private interest factors that weigh in favor of a transfer to the SDI. Under *Atlantic Marine*, the burden of resisting a forum selection clause is heavy, and Billings has not met it. There is no reason apparent why the Court should not enforce the forum selection clause.

## **CONCLUSION**

Ryze has demonstrated that forum selection clause designates the SDI as the proper federal forum for all claims alleged by Billings. Billings has not sufficiently demonstrated that the Agreement as a whole is invalid, has not demonstrated that the forum selection clause in particular is invalid, and has not demonstrated that public interest factors sufficiently outweigh the effect of the forum selection clause. Therefore, the Court will enforce the forum selection clause and transfer this case to the SDI. See Atlantic Marine, 571 U.S. at 63-64.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. The following language from the employment contracts between Billings and Eagle and Billings and Ryze is STRICKEN:[17]

    a. Under § 7 "Injunctive Relief and Other Remedies": "In the event it becomes necessary for Eagle to institute legal proceedings to enforce any terms of this Agreement against Employee, Employee shall be liable to Eagle for all costs of such legal proceedings, including reasonable attorneys' fees."

    b. Under § 8(c) "Applicable Jurisdiction": ". . . as well as any state in which resides a customer assigned to Employee.";

2. Defendant's motion to change venue (Doc. No. 7) is GRANTED;

---

[17] These Agreements are part of Doc. No. 7-2 as Exhibits A and B to the Declaration of John C. Devoe.

1    3.    This case is TRANSFERRED forthwith to the United States District Court for the

2          Southern District of Indiana – Indianapolis Division; and

3    4.    The Clerk shall CLOSE this case.

4

5    IT IS SO ORDERED.

6    Dated: __June 7, 2018__                    _____

7                                                     SENIOR  DISTRICT  JUDGE